# IN THE MATTER OF THE "ANALYSIS OF WALSH TRUCKING OCCUPANCY AND SPRINKLER SYSTEM"

## Superior Court of New Jersey
### Appellate Division

Argued January 6, 1987—Decided February 19, 1987.

224

Before Judges MICHELS and SKILLMAN.

*William J. Wolf,* argued the cause for appellant (*Bathgate, Wegener, Wouters & Neumann,* attorneys; *William J. Wolf,* on the brief).

*Geraldine Callahan,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Geraldine Callahan,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Appellant, Walsh Trucking Company, receives, consolidates and ships clothing to major department stores throughout the country. It operates the business from a building in North Bergen Township which it has leased since 1978. This building contains a garment handling and conveyance rack system (the rack system) installed by appellant when it commenced operations. The rack system consists of a monorail and trolleys, which are located on two tiers in one part of the building and on three tiers in another part. Clothing is brought to the building, attached to trolleys, and transported through the multi-tiered monorail system. Sorting, counting, inspecting and loading are done at different locations within the system. Although the building is not used for warehousing, some clothing is left on the rack system at the end of the workweek.

The sprinkler system presently in the building does not include any in-rack sprinklers. In the event of fire, sprinklers located on the ceiling would provide a flow of water from the ceiling through gridlike, metal catwalks on the second and third tiers of the rack system, and around any garments hanging on the rack system, to the floor area below.

On February 7, 1979, appellant applied to the Hackensack Meadowlands Development Commission (HMDC) for a certificate of occupancy for the building. When the HMDC questioned the adequacy of appellant's sprinkler system, appellant submitted two engineering reports which vouched for its adequacy.

The engineering staff of the HMDC rejected these reports and issued its own report to the construction official of North Bergen which recommended that appellant be required to install a sprinkler system within the rack system. The HMDC summary accompanying this report stated in part:

> After a thorough analysis of this matter we have concluded that the existing sprinkler system is inadequate for the occupancy of this building by Walsh Trucking. Their installation of a new multi-level rack system for hanging garments has completely changed the character of this occupancy.
>
> Hanging garments on a multiple level rack system are a unique occupancy and present a severe fire hazard if not properly sprinklered. An in-rack sprinkler system must be provided. In addition it may be necessary to upgrade or replace the existing roof level system. This system should be designed by a Licensed Fire Protection Engineer with experience in this particular type of occupancy and in accordance with the latest and highest standards of accepted engineering practice, which at this point we believe is Factory Mutual Data Sheet 8–18.

The North Bergen construction official adopted the HMDC report in its entirety. He made a factual finding that "the existing sprinkler system is inadequate for the occupancy of this building by Walsh Trucking Company." Accordingly, on February 24, 1984, he ordered appellant "to provide sprinkler protection for this facility in accordance with the design criteria specified in [Factory Mutual Data Sheet 8–18], with the exception that sprinkler shields may be provided in lieu of plywood decking."

Appellant appealed this decision to respondent, Hackensack Meadowlands District Construction Board of Appeals (HMD Board). There was a long delay in scheduling a hearing on the appeal because of difficulties in assembling a quorum. When the hearing was ultimately conducted, the HMD Board affirmed the decision of the North Bergen construction official.

We agree with the HMD Board's conclusion that a construction official may under appropriate circumstances require compliance with standards different from those expressly adopted by the Commissioner of Community Affairs. However, we also conclude that the hearing held by the HMD Board was procedurally deficient. Therefore, we reverse and remand for a new hearing.[1]

The regulatory legislation pursuant to which the construction official and HMD Board acted is the State Uniform Construction Code Act, *N.J.S.A.* 52:27D–119 *et seq.* This legislation directs the Commissioner of Community Affairs to adopt a State Uniform Construction Code, *N.J.S.A.* 52:27D–123a, including a fire prevention subcode, *N.J.S.A.* 52:27D–123b. It also provides that subcodes shall be adoptions of the model codes of the Building Officials and Code Administrators International, Inc. (BOCA), unless the Commissioner determines for "good reasons" to adopt a model code of some other nationally recognized organization. The Commissioner adopted specified sections of the BOCA code as the fire prevention subcode. *N.J. A.C.* 5:23–3.17(a)(1)(i).

Section 1704.1 of the 1981 BOCA code refers to Appendix A of that code and directs that water sprinkler fire extinguishment systems shall be installed in accordance with the National Fire Protection Association Code (NFPA) Standard 13. This standard—which is the normal standard for the installation of

---

[1]No certificate of occupancy has ever been issued to appellant. Nonetheless, it has conducted operations for nearly nine years in the building it leases. The record contains no explanation of how this has occurred.

fire protection sprinkler systems in buildings—apparently distinguishes between different types of building uses and recommends appropriate sprinkler systems for those uses.[2]

The report of the engineering staff concluded—and the North Bergen construction official and HMD Board agreed—that the rack system in appellant's premises is significantly different from any of the categories of building uses covered by NFPA Standard 13. Therefore, it determined that a standard different from any contained in NFPA Standard 13 should be applied to appellant's building. The standard which it found to fit this rather unusual building use was Factory Mutual Data Sheet 8–18, which is a standard adopted by an insurance rating organization.

In concluding that it was not required to apply one of the standards contained in NFPA 13, the HMD Board relied upon *N.J.A.C.* 5:23–2.2(c). This regulation permits a construction official to exercise administrative discretion and to deviate from the standards set forth in BOCA under certain circumstances. It provides:

> Any requirement essential for structural, fire or sanitary safety of a building or structure, or essential for the safety of the occupants thereof, *and which is not specifically covered by the regulations,* shall be determined by the construction official, and appropriate subcode official. [Emphasis added].

Appellant argues that because the BOCA Code adopted by the Commissioner of Community Affairs deals directly with the subject of sprinkler systems required in commercial premises, the North Bergen construction official lacked the authority to require appellant to install a sprinkler system different from that provided in BOCA. In other words, appellant takes the position that *N.J.A.C.* 5:23–2.2(c) would authorize a construction

---

[2]Neither party has included the pertinent sections of the National Fire Protection Code in their appendices. Therefore, we have not had an opportunity to review that Code. Instead, we have relied upon the descriptions of it contained in the parties' briefs and exhibits. Although we find it unnecessary in view of our disposition of the appeal to review the Code, the pertinent sections should be introduced into evidence at the hearing on remand.

official to determine the specific type of sprinkler system required in a building only if BOCA did not deal with the subject. Since BOCA specifies the sprinkler systems required for particular building uses, appellant concludes that a construction code official's authority is limited to determining which BOCA building use most nearly corresponds with appellant's business operation.

■ We conclude that appellant's reading of *N.J.A.C.* 5:23–2.-2(c) is unduly restrictive. There obviously are some building uses which are unusual or unique. Such uses also may require unusual or unique fire protection systems. The Commissioner probably concluded that the BOCA code does not address every unusual building use and that construction officials should have the flexibility in administering the code to determine the fire protection needs of such buildings on an individualized basis. Therefore, he adopted *N.J.A.C.* 5:23–2.2(c), which authorizes a construction code official to determine "[a]ny requirement essential for ... fire ... safety of a building ... or essential for the safety of the occupants thereof ... *which is not specifically covered by the regulations.*" (Emphasis added). We conclude that where a building use is different in any significant respect from the building uses "specifically covered" by the fire prevention subcode of BOCA adopted by the Commissioner, a construction code official is authorized by *N.J.A.C.* 5:23–2.2(c) to determine the particular fire prevention requirements of the building.

■ We also reject appellant's argument that it was denied due process by the individualized evaluation of its fire protection system, because *N.J.A.C.* 5:23–2.2(c) contains no objective standards to control a construction code official's exercise of discretion. Our courts have long recognized that a legislative standard may be expressed in general terms. *See, e.g., Keyes Martin & Co v. Director, Division of Purchase & Property,* 99

*N.J.* 244, 254–262 (1985) ("public interest"); *Burton v. Sills,* 53 *N.J.* 86, 90–91 (1968), appeal dism. 394 *U.S.* 812, 89 *S.Ct.* 1486, 22 *L.Ed.*2d 748 (1969) ("public health, safety or welfare"); *Ward v. Scott,* 11 *N.J.* 117, 123–124 (1952) ("public convenience and necessity"). To avoid administrative arbitrariness, such a general legislative standard is construed in light of the regulatory objectives of the underlying legislative enactment. *Keyes Martin & Co. v. Director, Division of Purchase & Property, supra,* 99 *N.J.* at 256; *Motyka v. McCorkle,* 58 *N.J.* 165, 178–179 (1971). Our courts have also recognized that adequate procedural safeguards may provide greater protection against arbitrary administrative action than highly detailed legislative standards. *Keyes Martin & Co. v. Director, Division of Purchase & Property, supra,* 99 *N.J.* at 261; *Burton v. Sills, supra,* 53 *N.J.* at 91.

*N.J.A.C.* 5:23–2.2(c) contains more than adequate standards to guide the exercise of a construction official's discretion when fire safety requirements are not specifically covered by regulations adopted by the Commissioner. The regulation specifies that those requirements must be "essential for ... fire ... safety of a building ... or essential for the safety of the occupants thereof...." Furthermore, the hearing provided on an appeal to a construction board of appeals, *N.J.S.A.* 52:27D–127, and review by this court provide adequate safeguards against arbitrary action by a construction official.

We are also satisfied that a construction official may appropriately consider a standard such as Factory Mutual Data Sheet 8–18 (FM 8–18) in determining the requirements for fire safety in a building not specifically covered by the standards contained in BOCA. This standard has not been adopted by the Commissioner as a regulation. Hence, it does not have the force of law and is not entitled to the presumption of validity which would be accorded an administrative regulation. None-

theless, where BOCA does not provide an applicable standard, it may be appropriate for a construction official to rely upon other generally accepted standards.

We turn now to the adequacy of the procedures followed by the HMD Board in hearing the appeal from the order that appellant install an in-rack sprinkler system in accordance with FM 8–18. The construction official's decision necessarily rested upon two implicit factual findings. First, he had to find that the requirements for fire safety on appellant's premises was "not specifically covered by the regulations." *N.J.A.C.* 5:23-2.-2(c). Absent this finding, the construction official would have been required to apply one of the standards incorporated in BOCA. Second, he had to find that the requirements of FM 8–18 were essential for the fire safety of appellant's "building" or "the occupants thereof."

Since the proceeding before the HMD Board was initiated by appellant's appeal from the decision of the North Bergen construction official, the HMD Board decided that appellant was required to present its proofs first. Appellant produced several experts who testified generally that the applicable fire safety standard is NFPA 13 and that appellant's existing ceiling sprinkler system provides adequate protection for the building and its occupants. No expert testimony was presented on behalf of the North Bergen construction official or the HMDC. Therefore, the only substantial evidence in opposition to appellant's application was the HMDC staff engineering report.

In determining the adequacy of the proceeding before the HMD Board, we note that no hearing was conducted by the construction official. While characterized as an "appeal," the hearing before the HMD Board was the only hearing ever afforded appellant. Therefore, it was incumbent upon the HMD Board to hold a hearing which conformed with the procedural requirements which govern quasi-judicial proceed-

ings. These requirements include an opportunity to challenge the evidence supporting the agency's proposed action and the issuance of adequate findings of fact and conclusions of law to support its final decision. The decision of the HMD Board was deficient in both of these respects.

*N.J.A.C.* 1:1–15.8(b) provides:

Notwithstanding the admissibility of hearsay evidence, some legally competent evidence must exist to support each ultimate finding of fact to an extent sufficient to provide assurances of reliability and to avoid the fact or appearance of arbitrariness.

*See also Weston v. State,* 60 *N.J.* 36 (1972). This rule, commonly referred to as the "residuum" rule, was violated in the present case. The Board's decision was based almost entirely upon the HMDC staff engineering report, but neither the author of the report nor anyone else was called as a witness to be subject to cross-examination and to defend the conclusions of the report.

In arguing that the "residuum" rule is inapplicable, the HMD Board asserts that the facts in this case are undisputed. However, while there may be no dispute concerning the nature of appellant's business operation, there is a dispute over whether that business operation is a building use covered by NFPA 13 and, if not, what type of sprinkler system is essential for the protection of appellant's building and its occupants. Appellant's experts and the HMDC engineering report expressed conflicting factual conclusions with respect to these issues. Therefore, appellant's counsel should have been afforded the opportunity to cross-examine the author of the report or another suitable member of the HMDC engineering staff.

We further note that the record in this case is disjointed and does not clearly focus upon the issues in dispute. Therefore, the failure to present any testimony to support the construction official's decision resulted in an inadequate record upon which to review the agency's decision.

The Board's decision is also deficient in failing to set forth adequate findings of fact and conclusions of law. The decision simply states as follows:

Whereas section N.J.A.C. 5:23–2.2(c) of the Uniform Construction Code directs the Construction Official or Subcode Official to determine established requirements not specifically covered by the Code, [*sic*] Therefore, it is determined here today that the applicant Walsh Trucking must conform to the Building Subcode Official's Order to conform to the sprinkler system (as) per Factory Mutual sheet 8–18.

This decision does not contain any findings concerning the nature of appellant's business operations. Nor does it explain why those business operations fall beyond the coverage of NFPA 13. Furthermore, the decision contains no discussion of the evidence presented by appellant.

Our courts have frequently commented upon the importance of adequate findings of fact and conclusions of law to assure basic fairness to the parties and to enable any appellate court to intelligently review the decision of an administrative agency. *See, e.g., New Jersey Bell Telephone Co. v. Communications Workers of America,* 5 *N.J.* 354, 374–379 (1950); *In re Crowley,* 193 *N.J.Super.* 197, 214 (App.Div.1984); *In re Application of Union Community Bank,* 144 *N.J.Super.* 39, 46–47 (App. Div.1976). As we stated in *In re Crowley:*

In reviewing an agency decision to determine whether it is supported by substantial credible evidence and is not arbitrary, unreasonable or capricious, we must have a clear statement from the administrative agency as to the basis for its decision. The requirement of findings is far from a technicality, but is rather a matter of substance. A conclusion requires evidence to support it and findings of appropriate definiteness to express it. [193 *N.J.Super.* at 214; citations omitted].

The HMD Board's decision fails to satisfy these requirements.

Accordingly, we reverse the decision of the HMD Board and remand to that agency for a new hearing in conformity with this opinion. In view of the length of time already taken to resolve this matter, we direct that the hearing on remand be completed within 60 days. We do not retain jurisdiction.