ANTHONY VENUTI, T/A CAROUSEL MOTEL, PLAINTIFF–APPEL-
LANT, v. CAPE MAY COUNTY CONSTRUCTION BOARD OF
APPEALS AND THE FIRE PREVENTION AND INSPECTION
BUREAU OF THE BOROUGH OF WILDWOOD CREST, DEFEN-
DANTS–RESPONDENTS, AND THE BOROUGH OF WILD-
WOOD CREST, A MUNICIPAL CORPORATION IN THE COUN-
TY OF CAPE MAY, DEFENDANT, AND NEW JERSEY DE-
PARTMENT OF COMMUNITY AFFAIRS, INTERVENOR–RE-
SPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 5, 1989—Decided March 23, 1989.

Before Judges BRODY, ASHBEY and SKILLMAN.

*William J. Bigham* argued the cause for appellant (*Hannoch Weisman*, attorneys; *William J. Bigham*, of counsel; *Susan Stryker* and *William J. Bigham*, on the brief).

*Carmen H. Alvarez* argued the cause for respondent, The Fire Prevention and Inspection Bureau of the Borough of Wildwood Crest (*Alvarez and Israelow*, attorneys; *Carmen H. Alvarez*, on the brief).

*John J. Chernoski*, Deputy Attorney General, argued the cause for intervenor-respondent Department of Community Affairs (*Cary Edwards*, Attorney General, attorney; *Michael R. Clancy*, Deputy Attorney General, of counsel; *John J. Chernoski*, on the brief).

A brief was filed on behalf of respondent Cape May County Construction Board of Appeals (*Hornstine, Stagliano & Baldini*, attorneys; *Thomas F. Bradley*, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The issue presented by this appeal is whether subsection F–408.11 of the 1984 BOCA National Fire Prevention Code (Fire Prevention Code), adopted by the Department of Community

Affairs (Department) by administrative regulation, *N.J.A.C.* 5:18–3.1(a), requires portable fire extinguishers to be placed in motel and hotel rooms which contain cooking facilities. We conclude that the Code does not impose this requirement.

Plaintiff Anthony Venuti owns and operates a motel in Wildwood Crest known as the Carousel Motel, which is a three story building with 48 "rooming units" and 16 "efficiency units" containing kitchen facilities. Plaintiff was cited by the fire subcode official of defendant Wildwood Crest Borough for numerous Fire Prevention Code violations, including the absence of portable fire extinguishers in his efficiency units.

Plaintiff appealed to defendant Cape May County Construction Board of Appeals (Board) from the fire subcode official's decision that he was required by subsection F–408.11 to have fire extinguishers in each efficiency unit.[1] The Board affirmed the fire subcode official's decision by a three to one vote.

Plaintiff filed an action in the Law Division challenging the Board's decision.[2] The trial court issued a letter opinion affirming the Board's decision, which was memorialized by a final judgment entered on November 4, 1987. Plaintiff appealed and we granted the Department's motion to intervene.

On November 12, 1983, the Legislature enacted the Uniform Fire Safety Act, *N.J.S.A.* 52:27D–192 *et seq.* One of the purposes of this legislation is to ensure that "[a]ll areas of this State are protected by a uniform, minimum, fire safety code which will protect the lives and property of the State's citizens." *N.J.S.A.* 52:27D–195a. The Act delegates to the Commissioner of Community Affairs "all the powers necessary or convenient to effectuate the purposes of this act ...," *N.J.S.A.*

---

[1]Plaintiff apparently did not dispute the other code violations found by the subcode official.

[2]This suit named Wildwood Crest Borough, the Board and the Fire Prevention and Inspection Bureau of the Borough of Wildwood Crest as defendants. However, Wildwood Crest Borough was dismissed from the action.

52:27D–197, including the power to promulgate "regulations to insure the maintenance and operation of buildings and equipment in such a manner as will provide a reasonable degree of safety from fire and explosion." *N.J.S.A.* 52:27D–198a. The Act directs that the regulations "shall include a uniform fire safety code primarily based on the standards established by [uniform national fire codes]." *Ibid.*

Pursuant to this legislative mandate, the Department promulgated the Uniform Fire Code, *N.J.A.C.* 5:18–1.1 *et seq. N.J.A. C.* 5:18–1.3 provides that the Uniform Fire Code is designed "for the safeguarding to a reasonable degree of life and property from ... conditions hazardous to life or property in the use or occupancy of buildings or premises." *N.J.A.C.* 5:18–1,3(1)(a). Subchapter 3 of the Code, entitled "Fire Prevention Code," adopts by reference, with slight modifications, the 1984 version of the Basic/National Fire Prevention Code prepared by the Building Officials and Code Administrators International, Inc. (BOCA).[3] *N.J.A.C.* 5:18–3.1(a).

Subsection F–408.11 of the Fire Prevention Code, which the trial court found to require portable fire extinguishers in hotel rooms with cooking facilities, is part of section F–408.0. This section is entitled "fire suppression systems for cooking operations." The first subsection of F–408.0 states that "[t]he provisions of this section shall govern the installation, repair, operation and maintenance of fire suppression systems for range hoods and food preparation centers in all buildings and structures." § F–408.1. The second subsection requires the installation of "[a]n approved automatic fire suppression system ... in all hoods and connecting hood and duct systems when used in

---

[3]The New Jersey Administrative Code does not set forth the provisions of the BOCA Code except for those sections which have been modified by the Department. Therefore, this opinion refers to the applicable BOCA Code sections for purposes of citations except where the BOCA Code has been modified by the administrative code. In that case, both relevant citations are provided.

conjunction with fry and cooking operations in food preparation centers within any occupancy except individual dwelling units." § F-408.2. The next subsection requires that "[a]ll existing food operations in all uses, except those within individual dwelling units, which are not protected by an automatic fire suppression system and constituting a fire hazard shall be provided with an approved fire suppression system." § F-408.2.1.[4] The final subsection of F-408.0 is F-408.11, which provides in part:

> All cooking operations and all food preparation centers within any occupancy, except individual dwelling units, shall provide a sufficient number of portable fire extinguishers to afford adequate fire safety as determined by the fire official but not less than one unit.

In addition, subsection F-408.11 requires all portable fire extinguishers to "be compatible with the fire suppression system extinguishing agent." This apparently refers to the fire suppression system required pursuant to subsections F-408.2 and F-408.2.1. Thus, the requirements of subsection F-408.11 appear to be ancillary to the requirements of the preceding subsections of F-408.0.

Subsections F-408.2, F-408.2.1 and F-408.11 all expressly except cooking operations in "individual dwelling units" from the requirements imposed therein. The term "individual dwelling unit" is not defined in section F-408.0 or any other part of the Fire Prevention Code. However, the term "dwelling unit" is defined in the Uniform Fire Safety Act, pursuant to which the Code was adopted, as "a room, suite, or apartment which is occupied or intended to be occupied for dwelling purposes by one or more persons living independently of persons in similar dwelling units." *N.J.S.A.* 52:27D-196f. This definition does

---

[4]We note in passing that the various subsections of F-408.0 apply only to "cooking operations," "food operations" and "food preparation centers." However, none of these terms is defined. Consequently, the intended scope of the regulations is unclear. For example, it has become fairly common for business offices to contain not only coffee pots but also microwaves which can be used to heat food. Does the presence of such facilities in an office make it a "cooking operation," "food operation" or "food preparation center"? The Department should clarify its regulations in this respect.

not distinguish between permanent and transient occupancy of a room, suite or apartment, and we see no basis for reading such a distinction into *N.J.S.A.* 52:27D–196f. *See also N.J.S.A.* 55:13A–3(h) (a "dwelling unit" is "any room ... suite or apartment ... which is arranged or designed to be occupied for sleeping or dwelling purposes.").

We reject defendants' argument that because the Fire Prevention Code contains no definition of "individual dwelling unit" and because subsection F–200.3, as modified by *N.J.A.C.* 5:18–3.2(a)(2)(i), states that where a term is not defined in the Fire Prevention Code it shall have the meaning ascribed to it in the New Jersey Uniform Construction Code (Construction Code),[5] the definition of "dwelling unit" in the Construction Code should be used in construing section F–408.0. Administrative regulations should be construed in a manner consistent with the enabling legislation pursuant to which they have been adopted. *See State of New Jersey, Dep't of Environmental Protection v. Stavola,* 103 *N.J.* 425, 434–436 (1986). Consequently, when an administrative regulation uses a term which is the same or similar to a term defined in the enabling legislation, it should be presumed that the agency intended the term to be used in the same manner as in the statute. Therefore, we conclude that the term "individual dwelling unit" in section F–408.0 *et seq.* should be construed to have the same meaning as the term "dwelling unit" in *N.J.S.A.* 52:27D–196f and that the term thus applies to both permanent and transient occupancies.

In any event, the definition of "dwelling unit" in the Construction Code relied upon by defendants is not inconsistent with the definition of this term in *N.J.S.A.* 52:27D–196f. The

---

[5]The Construction Code, *N.J.A.C.* 5:23–1.1 *et seq.*, was promulgated by the Department pursuant to authority delegated by the State Uniform Construction Code Act, *N.J.S.A.* 52:27D–119 *et seq.*, and adopts by reference the 1987 BOCA National Building Code with certain modifications. *See N.J.A.C.* 5:23–3.14(a) and (b).

Construction Code defines "dwelling unit" as "[a] single unit providing complete, independent living facilities for one or more persons, *including permanent provisions for living, sleeping, eating, cooking, and sanitation.*" *See* Section 201 of the 1987 BOCA National Building Code. (Emphasis added). "Ordinarily, the term 'include' is used as a word of enlargement and not of limitation." *Fraser v. Robin Dee Day Camp,* 44 *N.J.* 480, 485 (1965). Therefore, the definition of "dwelling unit" as "including permanent provisions for living, sleeping, eating, cooking, and sanitation" should not be construed to exclude transitory living facilities. In addition, the term "permanent" in this definition appears to refer to the nature of the facility rather than the length of the anticipated occupancy. Thus, the definition of a "dwelling unit" in the Construction Code is not inconsistent with our conclusion that hotel and motel rooms with cooking facilities are "individual dwelling units" and therefore exempt from the requirements imposed by section F–408.0 *et seq.* for fire suppression systems.

This conclusion is reinforced by the fact that other sections of the administrative code specifically address the subject of fire safety systems in hotels and motels. For example, subsection 409.2.3 of the Fire Prevention Code provides that "[i]n hotels, dormitories and lodging houses, at least one fire extinguisher shall be provided on each floor at the stairway landing and in the corridor at each elevator or bank of elevators." If the drafters of the Fire Prevention Code had intended to require that fire extinguishers also be installed inside of any hotel or motel room with cooking facilities, F–409.2.3 would have been the most logical subsection in which to set forth that requirement. *See also N.J.S.A.* 55:13A–7.1 (requirement for smoke detectors in hotel and multiple dwellings); *N.J.A.C.* 5:10–25.1 *et seq.* (regulations for maintenance of hotels and multiple dwellings dealing with fire protection).

We also reject defendants' argument that the municipal subcode official can require the placement of portable fire

extinguishers in plaintiff's efficiency units in the exercise of his powers under *N.J.A.C.* 5:23–2.2(c). This regulation provides:

Any requirement essential for structural, fire or sanitary safety of a building or structure, or essential for the safety of the occupants thereof, and which is not specifically covered by the regulations, shall be determined by the construction official, and appropriate subcode official.

*N.J.A.C.* 5:23–2.2(c) only applies to a building use which is "unusual or unique" and thus requires "unusual or unique fire protection systems." *In re Walsh Trucking Occupancy & Sprinkler System,* 215 *N.J. Super.* 222, 228 (App.Div.1987). Defendants have failed to establish that there is anything unusual or unique about an efficiency dwelling unit with cooking facilities. Therefore, there is no need "to determine the fire protection needs of such [units] on an individual basis." *Ibid.* Furthermore, subsection F–409.2.3 specifies the fire safety equipment required in a motel or hotel. If there is any need for additional protection where cooking facilities are located in individual units, the Department should adopt an appropriate amendment to subsection F–409.2.3 rather than suggesting that *N.J.A.C.* 5:23–2.2(c) provides broad authorization for *ad hoc* local decision making.

 We recognize that the Department issued a bulletin on June 16, 1987, which concluded that subsection F–408.11 requires hotel and motel rooms in which "cooking operations are provided or permitted" to be equipped with fire extinguishers. An agency's interpretation of its regulations is entitled to due deference by a court which is called upon to interpret those regulations. *DiMaria v. Board of Trustees of Public Employees Retirement System,* 225 *N.J.Super.* 341, 351 (App.Div. 1988), certif. den. 113 *N.J.* 638 (1988). However, an agency may not use its power to interpret its own regulations as a means of amending those regulations or adopting new regulations. *See State of New Jersey, Dep't of Environmental Protection v. Stavola, supra,* 103 *N.J.* at 434–439; *Boller Beverages, Inc. v. Davis,* 38 *N.J.* 138, 154–156 (1962). The June 16, 1987 bulletin issued by the Department attempts to establish a broad based general standard without giving the parties

affected an opportunity for a meaningful response through the rulemaking process. Therefore, it constitutes an improper attempt by the agency to amend its regulations in the guise of interpreting existing regulations.[6]

Finally, we note that the Department's June 16, 1987 bulletin expresses the view that because hotels are more densely occupied than permanent residences and the occupants often are not fully familiar with avenues of egress, "the risk of personal injury is far greater in a hotel setting than in an apartment and thus, an increased level of protection, including the requirement of fire extinguishers, is justified in hotel-type accommodations." The record before us does not provide an adequate basis to determine the validity of this view. However, if there is a basis for requiring more extensive fire protection measures in motel and hotel rooms with cooking facilities than in permanent living accommodations, the Department may propose the adoption of appropriate amendments to the Fire Prevention Code which expressly impose such requirements.

Accordingly, the judgment of the trial court is reversed.

---

[6]We note that the record also contains a letter from an official of BOCA which concludes that section F–408.11 does not apply to hotel and motel rooms which contain cooking facilities.