The judgment is affirmed and the cross-appeal is dismissed as moot.

824 A.2d 289

BESLER & COMPANY, INC., AND THE HOSPITAL CENTER AT ORANGE, PLAINTIFFS–APPELLANTS, v. DEBORAH C. BRADLEY, AS ACTING DIRECTOR OF THE DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, DEPARTMENT OF HUMAN SERVICES, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 20, 2003—Decided June 11, 2003.

Before Judges SKILLMAN, LEFELT and WINKELSTEIN.

*James V. Hetzel* argued the cause for appellants (*Kalison, McBride, Jackson & Murphy,* attorneys; *Mr. Hetzel,* of counsel and on the brief; *John J. Deno,* on the brief).

*Erin O'Leary,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Acting Attorney General, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel; *Ms. O'Leary,* on the brief).

The opinion of the court was delivered by

LEFELT, J.A.D.

Besler & Company, Inc. and the Hospital Center at Orange (Besler) contend that the Division of Medical Assistance and Health Services (DMAHS) violated the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –25, and *Metromedia, Inc. v. Dir., Div. of Taxation,* 97 *N.J.* 313, 478 *A.*2d 742 (1984), by issuing a letter without formal rulemaking, which mandated that all rate appeals be submitted directly from hospitals and not by consultants or agents. We agree that DMAHS should have acted by rulemaking and reverse and remand.

Besler represents over thirty hospitals and has prepared and filed directly with DMAHS, for each of its client hospitals, medicaid and other rate appeals. The instant dispute began when Besler and several of its client hospitals sent DMAHS separate appeals for 2002 Medicaid inpatient payment rates, one from Besler and one from each hospital. Because DMAHS staff could not determine which submission was from the hospital, DMAHS issued a July 10, 2001 letter notifying hospitals that "[b]eginning with any rate changes that take effect after January 31, 2001, a hospital's request for rate review ... will be accepted only if received by DMAHS directly from the hospital."

In a subsequent letter to Besler, DMAHS indicated that it would no longer accept rate appeals directly from the company and that the procedure requiring rate appeals to be filed by the hospital "applies to all appeals, regardless of whether the appeal applies to past, current, or future issues." Besler appealed, claiming the DMAHS directive was invalid because the agency's letter was in legal effect a rule that should have been implemented by notice and comment rulemaking under the APA.

■ The Supreme Court in *Metromedia, supra,* 97 *N.J.* 313, 478 *A.*2d 742, provided guidance on when a particular agency action should be considered de facto rulemaking. The guidance is important because informal agency action that is de facto rulemaking will be voided for failing to comply with the APA rulemaking procedures. *E.g., In re Comm'r of Ins.'s Issuance of Orders A–92–189 and A–92–212,* 274 *N.J.Super.* 385, 388, 644 *A.*2d 616 (App.Div.1993) (agency bulletin, relating to the reporting of insurance profits under the excess profits law, issued by the Commissioner of Insurance, was invalid because it was not properly issued as a rule), *aff'd o.b.,* 137 *N.J.* 93, 644 *A.*2d 576 (1994).

The Court enumerated in *Metromedia* six factors that are weighed to determine whether the APA rulemaking process should have been utilized. The first two factors focus attention on whether the particular action was intended: (1) "to have wide coverage encompassing a large segment of the regulated or general public" and (2) "to be applied generally and uniformly to all similarly situated persons." The third and fourth factors ask whether the action was (3) "designed to operate only in future cases ... prospectively" and (4) "prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization." The fifth factor is phrased in the alternative and asks whether the agency action "reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear past agency position on the identical subject matter." The sixth factor focuses on whether the action "reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy." *Id.* at 331–32, 478 *A.*2d 742.

All six factors need not be present for an agency's action to be considered a rule. *In re Solid Waste Util. Customer Lists,* 106 *N.J.* 508, 518, 524 *A.*2d 386 (1987). The factors must be weighed and not tabulated. *Ibid. Metromedia* specifically explained that

the agency's action would be considered a rule "when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process." *Metromedia, supra*, 97 *N.J.* at 331, 478 *A.*2d 742.

■ When the DMAHS letter is considered, it appears to be generally and uniformly applicable to all hospitals that submit rate appeals after January 2002. While Besler's duplicative filings may have been the impetus for the letter, the directive is not limited to Besler as no hospital may choose after January 2002 to have its rate appeals filed by an agent. By its terms and as explained in the letter to Besler, the practice applies prospectively to the 2002 rate year and to all subsequent rate years. In addition, the letter constitutes a standard that is not expressly provided or clearly and obviously inferable from any of DMAHS's enabling statutes. *See N.J.S.A.* 30:4D–4, –5, or –7. None of DMAHS's statutes provide any guidance regarding a hospital's ability to retain and utilize an agent in preparing and filing rate appeals. In addition, the letter reflects a decision that appears to be an interpretation of the agency's general policy.

DMAHS argues that its letter did not change its policy in any material or significant way because there already exists an applicable rule that prohibits agents from filing rate appeals. *N.J.A.C.* 10:52–9.1(b)(1) provides "[a] request for a rate review must be submitted by a hospital. . . ." DMAHS asserts that the rule's plain language encompasses the directive contained in its letter to Bessler.

*N.J.A.C.* 10:52–9.1(b)(1) does require that rate reviews "be submitted by a hospital," but we do not interpret that requirement as precluding submission by an agent on behalf of a hospital. Well settled principles of agency law recognize that an appeal submitted on behalf of the principal hospital by an agent would remain the hospital's submission. *E.g., State v. Carbone*, 10 *N.J.* 329, 340, 91 *A.*2d 571 (1952). Thus, the DMAHS letter constitutes the agency's interpretation that its rule precludes agent submissions.

DMAHS's argument that "the agency's own interpretation of a regulation within its expertise cannot be considered rulemaking" is simply wrong. "[A]n agency may not use its power to interpret its own regulations as a means of amending those regulations or adopting new regulations." *Venuti v. Cape May County Constr. Bd. of Appeals*, 231 *N.J.Super.* 546, 554, 555 *A.*2d 1175 (App.Div.1989). The manner in which an agency exercises broad discretion "may be governed by the [APA]." *St. Barnabas Med. Ctr. v. New Jersey Hosp. Rate Setting Comm'n*, 250 *N.J.Super.* 132, 143, 593 *A.*2d 806 (App.Div.1991).

The agency further contends that this is not a material or significant change in policy that warrants notice and comment rulemaking. Instead, DMHAS posits its action as "a simple, administrative procedure which avoids confusion caused by multiple submissions."

We agree that DMAHS has not made a major change in policy. Under this new practice, for example, Besler could prepare the rate appeal and simply have the hospital sign and file the documents. Under the APA, however, even minor procedural changes meet the definition of a rule.

The APA defines a rule as an "agency statement of general applicability and continuing effect." *N.J.S.A.* 52:14B–2(e). To be a rule the agency statement must also implement or interpret law or policy or describe "the organization, procedure or practice requirements of any agency." *Ibid.* Thus, the definition does not distinguish between significant, material, substantive, interpretive, or procedural rules. *See Ingraham v. Trowbridge Builders*, 297 *N.J.Super.* 72, 79, 687 *A.*2d 785 (App.Div.1997) (noting that the APA does not distinguish between substantive and interpretative rules). Under the APA, even a minor procedural change in how an agency wishes the public to interact with the agency, as occurred in this case, can meet the definition of a rule.

Rulemaking lies at the very heart of the administrative process. *Cammarata v. Essex County Park Comm'n*, 26 *N.J.* 404, 410, 140 *A.*2d 397 (1958). Rulemaking can assist agencies in furthering the

legislative policy goals of the agency's regulatory programs by developing coherent and rational codes of conduct. When an agency acts by rule, the regulated public's comments and participation can assist the agency in developing a sensible and complete rule.

In this instance, for example, the agency has indicated that it wishes rate appeals to come directly from the hospital. DMAHS has not, however, considered within the text of the letter whether it prefers, for example, that the appeal be signed by the hospital chief executive officer, its accountant, lawyer, or some other hospital personnel. In other areas corporate accountability has become quite significant. *E.g., In Re Enron Corp. Sec., Derivative & ERISA Litig.,* 235 *F.Supp.*2d 549 (S.D.Tex.2002). We should think that such resolution would be an ideal subject to be fine honed during rulemaking.

As it stands now, the policy would seem to allow any low level hospital employee to sign the rate appeal but would disallow Besler's chief executive officer to sign on behalf of the hospital. Such inconsistencies are often disclosed and remedied during an effective rulemaking process. Notice and comment rulemaking gives "those affected by the proposed rule an opportunity to participate in the rule-making process not just as a matter of fairness but also as 'a means of informing regulators of possibly unanticipated dimensions of a contemplated rule.' " *Coalition for Quality Health Care v. New Jersey Dep't of Banking and Ins.,* 348 *N.J.Super.* 272, 295, 791 *A.*2d 1085 (App.Div.), *certif. denied,* 174 *N.J.* 194, 803 *A.*2d 1165 (2002) (quoting *In re Adoption of Regulations Governing Volatile Organic Substances in Consumer Prods., N.J.A.C. 7:27–23,* 239 *N.J.Super.* 407, 411, 571 *A.*2d 971 (App.Div.1990)).

Accordingly, for failing to comply with APA rulemaking requirements, we reverse and vacate the agency's July 10, 2001 directive requiring that rate appeals be submitted directly from hospitals. We recommend that the agency commence APA rulemaking if it wishes to preclude agents from filing rate appeals on behalf of

hospitals. We also note that even though we have reversed the agency's July 10, 2001 directive, the agency may, of course, informally preclude hospitals and any agents from submitting duplicate or confusing rate appeals.

Reversed and remanded.