**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0247-23

MICHAEL DOTRO,

    Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Defendant-Respondent.

_____

Submitted October 7, 2024 – Decided November 1, 2024

Before Judges Sabatino and Jacobs.

On appeal from the New Jersey Department of Corrections.

Michael Dotro, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Eric Intriago, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Michael Dotro is incarcerated at East Jersey State Prison, administered by the New Jersey Department of Corrections. In 2017, Dotro pleaded guilty to attempted murder and aggravated arson, receiving a sentence of twenty years subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. He appeals from a final administrative decision issued by the Department denying him credits toward remission of his sentence pursuant to N.J.S.A. 30.4-123.100 (2020), titled the Public Health Emergency Credits Act ("PHECA" or "Act"). For reasons that follow, we affirm the Department's final decision.

I.

In response to increased viral transmissions among incarcerated persons and corrections personnel during the COVID-19 pandemic, the Legislature passed the PHECA. The PHECA, whose provisions are moribund in the absence of the declaration in 2020 of a public health emergency, authorized the Department to shorten sentences through issuance of jail-time credits by up to eight months for those incarcerated persons meeting enumerated criteria. Most notably within the Act's framework, the inmate's scheduled release date was required to be within one year or 365 days of a public health emergency, as declared by the Governor. The PHECA further required the Commissioner to act "in accordance with this section . . . ," effectively denying the Commissioner

2

discretion in awarding credits to ineligible incarcerated persons.

Dotro applied for credits under the PHECA in July 2023. The Department informed Dotro his claim was denied, noting that he was scheduled for release on July 12, 2034 and thus facially ineligible for any credits toward remission of his sentence. After receiving the denial, Dotro filed an inquiry with the Department asking why he and similarly situated incarcerated persons were excluded from receiving PHEC, and if there were administrative remedies available "to correct this inequality." The Department responded that credits were provided to incarcerated persons who were within 365 days of release beginning March 7, 2022 and that Governor Murphy terminated the program at the close of that 365-day period, effective March 7, 2023. Thereafter, Dotro filed a grievance with the Department requesting more information. He received a response in August 2023, stating he had already been provided a response to his inquiry. Dotro appealed to the Department and on the same day received a final agency decision that he was not eligible for relief and that the matter was considered closed.

Dotro filed a timely appeal of the agency's decision, raising a single point.

POINT I

> THE COMMISSIONER OF THE NEW JERSEY
> DEPARTMENT OF CORRECTIONS HAD THE

ABILITY TO REMEDY THE UNCONSTITUTIONAL SANCTIONS WITHIN THE COVID-19 LEGISLATION, AND THE ADDITION TO THE NEW JERSEY ADMINISTRATIVE CODE, BUT FAILED TO DO SO.

In furtherance of this stated argument, Dotro contends the PHECA, referenced in his argument on appeal as "the COVID-19 legislation," violated his equal protection and due process rights under the New Jersey Constitution. This contention is mirrored in his arguments regarding provisions of the New Jersey Administrative Procedure Act (NJAPA), N.J.S.A. 52:14B-1 to -15, which governs state agencies' promulgation of administrative rules and regulations. To remedy these purported constitutional violations, Dotro claims the Department should have provided a remedy by granting him "special credits" pursuant to N.J.S.A. 30:4-92a, which unlike the PHECA, allows the Commissioner discretion to award credits for other unrelated purposes, such as education and achievements in workforce training.

## II.

We turn first to the question of statutory interpretation and examine Dotro's eligibility under the PHECA as statutorily enacted. Legal questions of statutory interpretation are reviewed de novo. Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018). "When a

4

court construes a statute, its 'paramount goal' is to discern the Legislature's intent." In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 18 (2020) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). Appellate courts "look first to the statute's actual language and ascribe to its words their ordinary meaning." Ibid. (quoting Kean Fed'n of Tchrs. v. Morell, 233 N.J. 566, 583 (2018)). "[T]he best indicator of [the Legislature's] intent is the statutory language, thus it is the first place we look." Ibid. (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007) (internal quotation marks omitted)). "If the plain language leads to a clear and unambiguous result, then our interpretive process is over." Ibid.

The review of an appeal from an administrative agency's final determination is limited. Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). Appellate courts are required to defer to an agency's expertise or superior knowledge of its subject area except "'in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with State policy.'" Ibid. (quoting George Harms Constr. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994)).

A final determination of an administrative agency will not be overturned unless it is arbitrary, capricious, or unreasonable, or lacks fair support in the

record.  In re State & Sch. Emps.' Health Benefits Comm'ns' Implementation of In re Yucht, 233 N.J. 267, 279 (2018); In re Herrmann, 192 N.J. 19, 27-28 (2007).  Determining if a final agency decision is arbitrary, capricious, or unreasonable depends on:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Herrmann, 192 N.J. 19 at 28 (quoting Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995)).]

The party challenging the administrative action bears the burden of making that showing.  Lavezzi v. State, 219 N.J. 163, 171 (2014); see also Barone v. Dep't of Hum. Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 285 (App. Div. 1986), aff'd, 107 N.J. 355 (1987).

To begin, we note that seven months before enactment of the PHECA, Governor Murphy declared a public health emergency on March 9, 2020 relating to the COVID-19 pandemic, pursuant to Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020).  The Governor then terminated the public health emergency on June 4, 2021, pursuant to Exec. Order No. 244 (June 4, 2020), 53

6

N.J.R. 1131(a) (July 6, 2021). A public health emergency was reinstated on January 11, 2022, pursuant to Exec. Order No. 280 (Jan. 11, 2022), 54 N.J.R. 203(a) (Feb. 7, 2022) and terminated again on March 7, 2022, pursuant to Exec. Order No. 292 (Mar. 7, 2022), 54 N.J.R. 511(a) (Apr. 4, 2022). We are concerned with the second declared public health emergency because that is the period that pertains to Dotro's application for credits.

The pertinent text from the statute provides that whenever the Governor declares a public health emergency pursuant to the Emergency Health Powers Act, N.J.S.A. 26:13-1 to -36, the Commissioner of Corrections "shall award inmates public health emergency credits in accordance with this section if the public health emergency: (1) arises as a result of a communicable or infectious disease; and (2) results in substantial modifications to department-wide correctional facility operations." N.J.S.A. 30:4-123.100(a). Subsection (b) provides that "public health emergency credits shall be awarded to any inmate in the custody of the Commissioner of Corrections who: (1) is serving a sentence . . . and (2) is scheduled to be released from the custody of the Commissioner of Corrections within 365 days." (emphasis added).

Because the second public health emergency was in effect between January 11, 2022 and March 7, 2022, under terms of the Act, an eligible

incarcerated person must have a scheduled release date within 365 days from the end of the public health emergency, or between January 11, 2022 and March 7, 2023. Dotro's scheduled release is July 12, 2034, more than a decade after the maximum release date for which a given applicant would be eligible for the program. As a consequence, Dotro was properly excluded from consideration for receipt of public health emergency credits.

Certain inmates' preclusion from relief is reflected in the legislative history, which confirms the intended beneficiaries of the credits were limited to "certain inmates [] who are approaching the end of their sentences to reduce the risk of harm to inmates, juveniles, and facility staff, while protecting the public safety." Assemb. Budget Comm. Statement to S. 2519 (Sept. 22, 2020); S. L. & Pub. Safety Comm. Statement to S. 2519 (Aug. 21, 2020).

Alternatively, Dotro argues the Department had authority to award him PHEC pursuant to its authority under N.J.S.A. 30:4-92a, titled "Special credits." The statute states in pertinent part: "[T]he [C]ommissioner also may award special credits to provide further remission from time of sentence for achievements in education and workforce training." (emphasis added). "May" is generally construed as a permissive term, suggesting that an actor has discretion to take or decline to take a given action. Aponte-Correa v. Allstate

Ins. Co., 162 N.J. 318, 325 (2000) ("Under the 'plain meaning' rule of statutory construction, the word 'may' ordinarily is permissive and the word 'shall' generally is mandatory.")

Thus, the statutory construction of N.J.S.A. 30:4-92a relative to award of "special" credits uses the word "may" to delineate the Commissioner's authority to grant or deny special credits to incarcerated persons for the specific purpose of education or workforce training. It is clear the Commissioner held no explicit or discretionary authority to award PHEC to Dotro pursuant to N.J.S.A. 30:4-92a, as the statute is specific to achievements in education and workforce training. Dotro's reliance on this statute is misplaced, as there is nothing in the record to reflect his eligibility for achievements in either education or workforce training.

New Jersey Administrative Procedure Act and Constitutional Claims

The NJAPA sets forth rule-making requirements to which agencies shall conform when promulgating administrative rules or regulations. See N.J.S.A. 52:14B-3 (setting forth mandatory rules for information to be made available for public viewing). The Supreme Court has provided guidance on when an agency action, even when informal, should be considered de facto rule making. See Metromedia, Inc. v. Director, Div. of Tax'n, 97 N.J. 313, 331 (1984). The court

in <u>Metromedia</u> enumerated six factors to be weighed when determining whether the NJAPA rulemaking process should apply: "public notice of the anticipated action, broad participation of interested persons, presentation of views of the public, the receipt of general relevant information, the admission of evidence . . . , and the opportunity for continuing comment . . . before a final determination." <u>Ibid.</u>

Relying on Metromedia, Dotro argues that application of the PHECA rules to him was in violation of the NJAPA. Specifically, he claims the Department violated his rights to equal protection and due process by infringing on standards that are "to be applied generally and uniformly to all similarly situated persons." <u>Besler & Co. v. Bradley</u>, 361 N.J. Super. 168, 171 (2003). However, Dotro misinterprets the application of <u>Metromedia</u> and NJAPA to his circumstances. The court in <u>Metromedia</u> provided a rubric to help determine whether an agency's new rule or process is de facto rulemaking, in which case the new rule or process shall conform with NJAPA. Here, as a threshold matter, the Department had not set forth a new rule or procedure on its own. The Department simply complied with the PHECA without promulgating its own rules or regulations.

Regarding constitutional claims, the Fourteenth Amendment to the United

States Constitution guarantees that no state may "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Our state Constitution is construed to contain "expansive language" that guarantees those same fundamental rights. Caviglia v. Royal Tours of Am., 178 N.J. 460, 471-72 (2004) (referencing N.J. Const., art. I, ¶ 1). Analyses conducted under equal protection and due process "overlap" to some degree and "proceed[] along parallel lines," Greenberg v. Kimmelman, 99 N.J. 552, 569 (1985).

We evaluate these rights under the New Jersey Constitution by conducting a balancing test that weighs "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Id. at 567. Additionally, the analysis requires that the "means selected by the Legislature 'bear a real and substantial relationship to a permissible legislative purpose.'" Caviglia, 178 N.J. at 473 (quoting Taxpayers Ass'n of Weymouth Twp. v. Weymouth Twp., 80 N.J. 6, 44 (1976)). A fundamental right or suspect classification is subject to strict scrutiny but other rights or classes "need be only rationally related to a legitimate state interest." Right to Choose v. Byrne, 91 N.J. 287, 305 (1982).

11

Dotro argues the PHECA is fundamentally unconstitutional because: (1) it creates discriminatory animus between persons who are similarly situated, thereby establishing a suspect classification that should be subject to strict scrutiny; and (2) the Department violated his due process rights guaranteed by the New Jersey Constitution by dismissing his property and liberty entitlement to public health emergency credits, after having "sufficiently qualif[ied] for the requirements set forth within the [PHECA]."

The Department argues Dotro's claims should be subject to the first-filed rule, suggesting this court should dismiss Dotro's constitutional argument in deference to the federal courts who have already reviewed and dismissed the constitutional arguments as meritless. Indeed, we recognize that "[t]he general rule is to defer to the court which first acquires jurisdiction, absent the existence of special equities." Exxon Rsch. v. Eng'g Co. v. Indus. Risk Insurers, 341 N.J. Super. 489, 505 (App. Div. 2001). Nonetheless, for the sake of completeness, we reviewed the constitutional claims under the lens of the New Jersey State Constitution, which is construed to be coextensive with the U.S. Constitution in this regard. Caviglia, 178 N.J. at 471-72 (2004) (referencing N.J. Const., art. I, ¶ 1).

A-0247-23

From our review of the legislative history, it is plain that enactment of the PHECA was rationally related to a legitimate state interest. The Senate Commerce Committee intended the Act to "expedite the release of certain inmates [] who are approaching the end of their sentences to reduce the risk of harm to inmates [] and facility staff, while protecting the public safety." A. Budget Comm. Statement to S. 2519 1 (Sept. 22, 2020). In advancing that interest, the PHECA distinguishes among incarcerated persons based on the length of their sentence, excluding some based on the nature or severity of the offense for which they were convicted. Delineating this period to be within one year of release rationally balances concerns for public safety, on the one hand, with concerns for public health on the other. In this context, we have recognized that "[i]t is entirely appropriate for the Legislature to determine that convicted killers should serve thirty years of imprisonment without a reduction . . . , while allowing other inmates convicted of less serious offenses to reduce their sentences." Merola v. Dep't of Corrs., 285 N.J. Super. 501, 514-15 (App. Div. 1995). Enactment of the PHECA bore a rational relationship to a permissible legislative purpose of securing the health of incarcerated persons and prison personnel during a public health emergency.

In applying the terms of the PHECA to Dotro and finding him ineligible

for release, we are satisfied the Department acted reasonably and consistent with the terms of the Act. The Department's actions were neither arbitrary, capricious, unreasonable, nor unconstitutional.

To the extent we have not otherwise addressed appellant's arguments, it is because they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0247-23