EDWARD F. CLARK, JR., COUNTY EXECUTIVE OF THE COUNTY OF HUDSON, WILLIAM F. PEARL, JR., COMPTROLLER OF THE COUNTY OF HUDSON, THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON AND THE COUNTY OF HUDSON, PLAINTIFFS-APPELLANTS, AND COUNTY OF UNION, COUNTY OF BERGEN, COUNTY OF BURLINGTON, COUNTY OF CAMDEN, COUNTY OF CUMBERLAND, COUNTY OF ESSEX, COUNTY OF HUNTERDON, COUNTY OF MERCER, COUNTY OF MONMOUTH, COUNTY OF MORRIS, COUNTY OF OCEAN, COUNTY OF PASSAIC, COUNTY OF SALEM, COUNTY OF SOMERSET, AND COUNTY OF SUSSEX, PLAINTIFFS-INTERVENORS-APPELLANTS, v. JOHN J. DEGNAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, JOHN F. LAEZZA, JR., DIRECTOR OF THE DIVISION OF LOCAL GOVERNMENT IN THE STATE OF NEW JERSEY, THE LOCAL GOVERNMENT BOARD IN THE DIVISION OF LOCAL GOVERNMENT IN THE STATE OF NEW JERSEY, ANN KLEIN, COMMISSIONER OF THE DEPARTMENT OF HUMAN SERVICES IN THE STATE OF NEW JERSEY, ARTHUR J. SIMPSON, ADMINISTRATIVE DIRECTOR OF THE COURTS IN THE STATE OF NEW JERSEY AND GORI CARFORA, COURT ADMINISTRATOR FOR THE COUNTY OF HUDSON, DEFENDANTS-CROSS-APPELLANTS.

Argued May 6, 1980—Decided July 3, 1980.

*Francis P. Morley*, Hudson County Counsel, argued the cause for plaintiffs-appellants (*Francis P. Morley*, Hudson County Counsel, attorney; *Frank T. Koserowski*, Assistant Hudson County Counsel and *William J. McCloud*, Union County Counsel, on the brief).

*David Ben-Asher*, Essex County Counsel, argued the cause for plaintiffs-intervenors-appellants.

*Stephen Skillman*, Assistant Attorney General, argued the cause for defendants-cross-appellants (*John J. Degnan*, Attorney General of New Jersey, attorney; *Daniel P. Reynolds*, Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

SCHREIBER, J.

The question raised in this action is whether state-mandated expenditures by the County of Hudson for public welfare assistance, maintenance of county patients in state institutions, and operation of the court system cannot either individually or in total exceed the prior year's payments by more than the 5% limit of the county "Cap" statute ("Cap Law"), *N.J.S.A.* 40A:4–45.2 and –45.4. That law generally prohibits a county from increasing its county tax levy or final appropriations in excess of 5% of the previous year's figures. Put another way, are the state agencies and the judiciary prohibited from increasing expenditures by more than 5% over that of the prior year's because of the Cap Law?

Fifteen other counties were permitted to intervene and joined the action on behalf of the plaintiffs, Board of Chosen Freeholders, County Executive and County Comptroller of Hudson County. The named defendants are the Attorney General, the Director of the Division of Local Government, the Commissioner of the Department of Human Services, the State Administrative Director of the Courts and the Trial Court Administrator of Hudson County. After hearing cross-motions for summary judgment, the trial court dismissed the action and set forth its reasons in a written opinion. 163 *N.J.Super.* 344 (Law Div. 1978). Plaintiffs appealed and defendants cross-appealed. We granted plaintiffs' motion for direct certification. *R.* 2:12–2(a). 83 *N.J.* 389 (1980).

## I.

■ A preliminary matter is whether the action is moot. The verified complaint sought a declaratory judgment that increases in state-mandated expenditures (1) for maintenance of county patients in state institutions, (2) for administration of and provision for public welfare assistance programs and (3) for operation of the court system may not exceed 5% of the prior year's expenditures. However, Hudson County increased its allowable expenditures for 1978, including those in issue, in an amount within the allowable 5% limit. This budget was approved by the Director of the Division of Local Government Services and Hudson County operated under that budget.

Any ruling in this case would not affect expenditures for the year 1978. We agree with the trial court, however, that, though moot, we should nevertheless consider and decide the merits of the controversy. A bona fide dispute exists and the question is of sufficient public importance, its impact on future budgets being real. (The Cap Law is to remain in effect to December 31, 1982. *L.*1978, *c.* 155, § 1.) Accordingly, the cause will not be dismissed for mootness. *In re Court Budget and Court Personnel of Essex County,* 81 *N.J.* 494, 496 (1980); *Doe v. Bridgeton Hospital Ass'n, Inc.,* 71 *N.J.* 478, 482 n.1 (1976), *cert.* den. 433 *U.S.* 914, 97 *S.Ct.* 2987, 53 *L.Ed.2d* 1100 (1977); *Busik v. Levine,* 63 *N.J.* 351, 364 (1973), appeal dismissed for want of substantial federal question, 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.2d* 733 (1973).

## II.

■ The trial court found and the plaintiffs concede that the following state-mandated expenditures imposed upon the counties must be included in determining whether the county has exceeded the 5% allowable increase: maintenance of mentally ill and mentally retarded patients cared for in state institutions (*N.J.S.A.* 30:4–78 provides a formula for dividing this cost between the State and counties), Aid to Families with Dependent Children (*N.J.S.A.* 44:10–5 contains a formula for apportioning this expense among the federal government, the state

government and the county government), financial assistance to disabled, blind and aged individuals (*N.J.S.A.* 44:7–40, –46 and –82, respectively, set out the formulas for dividing up these costs among the federal, state and county governments), administrative costs of various welfare programs, and judicial services. The amount which a county must contribute for these purposes (other than the judicial services) is a function of the sums appropriated by the Legislature and the number of participants from that county. Therefore, when the Legislature increases its appropriations even though the number of county eligibles remains constant, the county's cost increases.

*N.J.S.A.* 40A:4–45.4 states:

In the preparation of its budget, a county may not increase the county tax levy to be apportioned among its constituent municipalities in excess of 5% of the previous year's county tax levy, subject to the following exceptions:

a. The amount of revenue generated by the increase in valuations within the county based solely on applying the preceding year's county tax rate to the apportionment valuation of new construction or improvements within the county and such increase shall be levied in direct proportion to said valuation;

b. Capital expenditures funded by any source other than the county tax levy;

c. An increase based upon a resolution making an emergency appropriation according to the definition provided in N.J.S. 40A:4–46 approved by at least two-thirds of the board of chosen freeholders of the county and, except as to an emergency appropriation for a purpose referred to in d. or f. below, where pertinent, approved by the county executive;

d. All debt service;

e. Expenditures mandated after the effective date of this act pursuant to State or Federal law;

f. Amounts required to be paid pursuant to any contract with respect to use, services or provision of any project, facility or public improvement for water, sewer, solid waste, parking, senior citizen housing or any similar purpose, or payments on account of debt service therefor, between a county, and any other county, municipality, school or other district, agency, authority, commission, instrumentality, public corporation, body corporate and politic or political subdivision of this State. With respect to the amounts required to be paid for senior citizen housing in the above cited political subdivisions or bodies, the exceptions shall be subject to the review and approval of the Local Finance Board.

The statutes here under review impose budgetary restrictions only on counties (*N.J.S.A.* 40A:4–45.2 and –45.4) and municipalities (*N.J.S.A.* 40A:4–45.2 and –45.3), not on state agencies and officers. *Cf.* State Expenditures Limitation Act, *N.J.S.A.* 52:9H–5 *et seq.* (setting an annual expenditure ceiling for the State). The County Cap statute does not by its terms limit

county expenditures required by state law. (Plaintiffs have not contended that these costs fall within the exemption of expenditures mandated after the effective date of the Cap Law. See discussion *infra*.)

Plaintiffs maintain that increases in the state-mandated expenditures must be limited to 5%, for otherwise the basic purposes of the Cap Law would be disserved.[1] Plaintiffs direct attention to the two divergent policies expressed in the prefatory language of the Cap Law at *N.J.S.A.* 40A:4–45.1 wherein the Legislature acknowledges the conflicting governmental aims of controlling "the spiraling cost of local government . . . to protect the homeowners of the State" and of recognizing that "local government cannot be constrained to the point that it is impossible to provide necessary services to its residents." In attempting to attain an accommodation of these cross purposes, the Legislature has fixed a limit on the amount of increased expenditures a municipality or county could incur over the prior year. Plaintiffs argue that by permitting the State to increase the counties' costs for these programs, the counties are unable to provide "necessary services."

The Legislature, however, controls the counties' expenditures. It has enacted the Cap Law. It has the power to amend, modify or repeal that law. It is the Legislature which is forcing the counties to expend less on other services by increasing the cost of state-mandated programs (assuming the county has otherwise reached the 5% limit). We note that the restrictions on municipalities are less onerous. Compare *N.J.S.A.* 40A:4–45.3 with *N.J.S.A.* 40A:4–45.4, indicating that the Legislature intended that counties have less leeway for increasing their expenditures. It is the Legislature which in the Cap Law has attempted on an experimental basis to harmonize rising costs

---

[1] Plaintiffs have further contended that no individual state-mandated item may exceed 5% over the previous year's figure or that all such items may be grouped so that the total does not exceed 5%. The wording of the statute is directed to the final line of total appropriations in the county budget and not to any particular line item. *Cf. PBA Local 29 v. Irvington*, 80 *N.J.* 271, 281 (1979).

and stability in property taxes. Finally, the county is a creature of the State. Its existence and powers depend upon the Legislature's determinations. It is subject to the dominion of the Legislature. *Bergen Cty. v. Port of N.Y. Auth.*, 32 *N.J.* 303, 312–313 (1960).

Although we find no support in the Cap Law for the counties' argument, we recognize that they may have been placed in a fiscal dilemma. They must provide basic county services, limit increases in the county tax levy, and are subjected to increased costs for programs over which they have no control. *Cf. Atlantic City v. Laezza*, 80 *N.J.* 255, 270 (1979) (municipalities faced with comparable dilemma). However, the wisdom of the legislation, and the desirability of modifications or reform are matters peculiarly within the legislative domain. See *McKenney v. Byrne*, 82 *N.J.* 304 (1980). As Justice Handler recently wrote in *Camden v. Byrne*, 82 *N.J.* 133 (1980):

> It is not for the courts to weigh the equities in a case such as this. The Constitution has placed the State's conscience in these matters in the Legislature and it is that branch of government which must weigh the interests of its citizens at all levels of government. [*Id.* at 158; citations omitted]

The counties should direct their pleas to the Legislature.[2]

### III.

Among the exceptions to the county's 5% limitation are "[e]xpenditures mandated after the effective date of this act pursuant to State or Federal Law. . . ." *N.J.S.A.* 40A:4–45.4(e). The trial court, contrary to the position taken by all parties, stated in dictum that the exception includes expenditures required after the effective date of the Cap Law by court

---

[2]Numerous bills have been introduced in the State Legislature to permit counties and municipalities to exceed the limits placed on expenditures under certain circumstances. See, *e. g.*,

S.181 introduced January 8, 1980
S.244 introduced January 8, 1980
S.399 introduced January 8, 1980
S.400 introduced January 8, 1980
A.606 introduced January 17, 1980
A.765 introduced February 4, 1980

decisions and administrative regulations as well as federal and state statutes.

We disagree. In *PBA Local 29 v. Irvington*, we held that the same exception for municipalities was applicable only to "a new service" or "a new activity." 80 *N.J.* at 288. Accordingly, we ruled in *Irvington* that a law providing for compulsory arbitration of disputes with fire and police personnel enacted after the effective date of the Cap Law did not fall within the exception since the subject matter did not involve a new service or a new activity. Indeed we noted that such an exclusion "would effectively render meaningless the 5% ceiling on municipal appropriations." *Id.* at 289.

State-mandated expenditures under existing programs occupy such significant portions of the county budgets that exemptions would substantially impair the act's effectiveness as a fiscal safeguard. For example, in Somerset County over 32% of the 1978 total expenditures are ascribable to financial obligations imposed by state agencies. Hudson County's 1978 budget consisted of over $25 million for the state-mandated maintenance of patients, welfare and judicial expenditures out of over $57 million. The act was obviously not intended to apply to only part of a county's budget. The same reasoning, with which we agree, has been advanced by the Attorney General.

> The exclusions for "[e]xpenditures mandated after the effective date of this act pursuant to State or Federal law" under sections 3(g) and 4(e) of the Act were intended to exclude expenditures for programs required by newly enacted legislation in order to avoid the harsh result of forcing local governments to cut other services to provide funds for newly created programs not included in previous budgets.
>
> While an initial reading of these provisions would seem to justify a construction whereby appropriations for preexisting state and Federal programs made after the effective date of the Local Government Cap Law could be excluded, such a construction has two inherent defects. First, this construction would nullify the significance of the words "after the effective date of this act" since all future appropriations would be after that date, and the same meaning could have been conveyed if these words were excluded. More significantly, such a construction would undermine the expressed legislative purpose to limit local government spending by limiting only the small proportion of expenditures arising out of local initiatives. [*Formal Op. Att'y Gen.* 5 at 254–255 (1977)]

Whether the term "law" contained in subsection (e) refers only to statutory enactments passed after the effective date of

the Cap Law or includes also court orders made after that date is an issue which we need not address. We are satisfied, however, that the expenditure must be for a new service or a new activity, the costs of which had not been reflected in pre-1977 budgets. See *PBA Local 29 v. Irvington*, 80 *N.J.* at 288.

## IV.

We agree with the trial court that there is no merit in plaintiffs' constitutional claims.

The judgment as modified is affirmed. No costs.

*For modification and affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and POLLOCK—6.

*For reversal*—None.