252 N.J. Super. 1 (1991)
599 A.2d 167
COUNTY OF ESSEX, A BODY POLITIC AND CORPORATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
COMMISSIONER, NEW JERSEY DEPARTMENT OF HUMAN SERVICES, AND HARRIET CANIK, CHIEF, BUREAU OF FINANCIAL STANDARDS AND PROCEDURES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1991.
Final Briefs Submitted May 10, 1991.
Decided June 14, 1991.
*2 Before Judges KING, LONG and R.S. COHEN.
Sharon M. Hallanan, Deputy Attorney General, argued the cause for appellants (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Michael R. Clancy, Assistant Attorney General, of counsel).
H. Curtis Meanor, Essex Special Counsel, argued the cause for respondent (Harry J. Del Plato, Assistant County Counsel, of counsel; Thomas M. Bachman, Assistant County Counsel, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
*3 This is an appeal and cross-appeal from a decision by Judge Villanueva on cross-motions for summary judgment in the Law Division. We conclude that the judgment in the Law Division must be affirmed for the reasons given by Judge Villanueva in his 94-page oral opinions of September 25, 1989 and October 19, 1989.
These are the contentions as framed by the State on its appeal and in response to the cross-appeal:
POINT I  THE TRIAL COURT ERRED IN ORDERING INJUNCTIVE RELIEF AND CREDIT TO ESSEX COUNTY BECAUSE N.J.S.A. 30:4-68.1 APPLIES ONLY TO STATE HOSPITALS FOR THE MENTALLY ILL AND NOT TO FACILITIES FOR THE DEVELOPMENTALLY DISABLED.
A. The Legislative History of N.J.S.A. 30:4-68.1, Which Was Given Short Shrift and Misconstrued By The Trial Court, Shows That The Statute Was Only Intended To Apply To The State Hospitals for the Mentally Ill.
B. The Internal Context of N.J.S.A. 30:4-68.1 And Comparison To Related Statutes In Title 30 Support The Conclusion That Counties Are Only Relieved From Maintenance Payments For Psychiatric Hospital Residents and Not For DDD Facilities Residents.
C. Caselaw Construing Title 30 Maintenance Responsibilities Supports The Conclusion That N.J.S.A. 30:4-68.1 Does Not Relieve Essex County From Maintenance Payments For Residents of DDD Facilities.
D. The Longstanding Administrative Interpretation of N.J.S.A. 30:4-68.1 Without Legislative Intervention Further Supports The Conclusion That the Statute Only Applies To State Hospitals For The Mentally Ill.
POINT II  IF THE TRIAL COURT'S ORDER APPLYING N.J.S.A. 30:4-68.1 TO THE DDD FACILITIES IS NOT REVERSED, THEN THE TRIAL COURT'S RULING DENYING RELIEF RETROACTIVE TO JANUARY 1, 1980 MUST ALSO BE AFFIRMED AS AN APPROPRIATE EXERCISE OF JUDICIAL DISCRETION TO AVOID DISASTROUS FISCAL CONSEQUENCES TO THE STATE UPON ANNOUNCEMENT OF A NEW PRINCIPLE OF LAW.
These are the counter-contentions of the County of Essex in response to the State's appeal and on its own cross-appeal:
POINT I  THE TRIAL COURT APPROPRIATELY ORDERED INJUNCTIVE RELIEF AND CREDIT TO ESSEX COUNTY SINCE N.J.S.A. 30:4-68.1 APPLIES TO STATE INSTITUTIONS AND FACILITIES FOR THE DEVELOPMENTALLY DISABLED AS WELL AS THE MENTALLY ILL.
POINT II  THE TRIAL COURT ERRED IN AWARDING PLAINTIFF ONLY PARTIAL RELIEF PROSPECTIVELY FROM MARCH 30, 1989. THE *4 PLAINTIFF IS LEGALLY ENTITLED TO FULL RETROACTIVE RELIEF FROM JANUARY 1, 1980, THE EFFECTIVE DATE OF N.J.S.A. 30:4-68.1.
A. THE COURT'S DENIAL OF RETROACTIVE RELIEF BASED ON THE APPLICATION OF THE VOLUNTEER RULE IS ERRONEOUS.
B. RETROACTIVE RELIEF IS THE APPROPRIATE REMEDY TO WHICH PLAINTIFF IS LEGALLY ENTITLED.
The plaintiff County of Essex filed this complaint in lieu of prerogative writ in April 1989. The County alleged that the Commissioner of the Department of Human Services and the Chief of Bureau of Financial Standards and Procedures had wrongfully charged the County for maintenance costs of persons residing in State institutions and facilities for the developmentally disabled in those cases where the State had received Federal Medicare and Medicaid benefits for those persons. The County sought prospective injunctive relief and repayment of these sums retroactive to June 1, 1980.
The State responded by moving to dismiss, contending that N.J.S.A. 30:4-68.1[1] (and N.J.S.A. 30:4-23[2]) applied only to State hospitals for the mentally ill and not to State institutions and facilities for the developmentally disabled (DD). The County cross-moved for summary judgment.
*5 As noted, Judge Villanueva denied the State's motion to dismiss and granted the County's motion for summary judgment, adopting the County's interpretation of N.J.S.A. 30:4-68.1. He held that the County was relieved from making institutional maintenance payments for developmentally disabled Medicaid and Medicare recipients but refused to make the ruling retroactive to January 1, 1980. He made the ruling retroactive to March 30, 1989.[3] A motion for reconsideration was denied. As a result of the ruling, a credit to the County of $4 million was allowed. We understand that some additional credits may be in order on reexamination of the statistics.
Judge Villanueva treated the State's motion to dismiss the complaint as a motion for summary judgment under R. 4:46-2 since matters outside the pleadings were considered by the court. He said the issue was whether the State had violated N.J.S.A. 30:4-68.1 by billing the County since January 1, 1980, the effective date of the statute, for the maintenance costs of mentally retarded patients for whom the State received Federal Medicaid and Medicare. The judge said that the State's argument that the statute applied only to psychiatric hospitals for the mentally ill and not to facilities for the developmentally disabled was based on ignoring the statutory definition of the word "patients" which controlled the meaning of the word in the first sentence of N.J.S.A. 30:4-68.1. He referred to N.J.S.A. 30:4-23, the definition statute which was in existence at the time N.J.S.A. 30:4-68.1 was enacted, which he said defined the terms in Chapter 4 of Title 30. As a result that definition controlled N.J.S.A. 30:4-68.1. Under N.J.S.A. 30:4-23 "patients" included "any person or persons alleged to be mentally ill, tuberculous or mentally retarded or whose admission to any institution for the care and treatment of such class of persons in this state has been applied for." The judge recognized that the definition statute had been repealed recently *6 but found it was applicable at the time the statute in issue was enacted. He said he did not think that the repeal of N.J.S.A. 30:4-23, effective in 1989, had any bearing on the analysis of N.J.S.A. 30:4-68.1. See L. 1987, c. 116, § 30, eff. June 7, 1989.[4]
The judge then set out the statutory scheme as referred to above under N.J.S.A. 30:4-66, 4-68, 4-78, and 4-165.3. He pointed out that the primary responsibility for the maintenance of a person in a state institution or facility rests upon that person or that person's legally responsible family members. N.J.S.A. 30:4-66. The rate of payment for such a person is fixed by the State House Commission. N.J.S.A. 30:4-78. If the patient or the responsible family members cannot pay the maintenance costs, N.J.S.A. 30:4-60 provides for payment to be made by the county of settlement and the State. Another source of financial support for indigent or elderly people is Federal Medicare and Medicaid under 42 U.S.C. § 1395 and § 1396 as well as N.J.S.A. 30:4D-7 to -17.14. The judge observed that N.J.S.A. 30:4-68.1 is the only state statute which makes reference to the relationship between Federal Medicare and Medicaid statutes and Title 30 maintenance costs. He said that "in making the contention that N.J.S.A. 30:4-68.1 applies only to the mentally ill as opposed to the mentally retarded, the defendants have ignored the clear and unambiguous legislative scheme set forth in Title 30, as well as the case law which has evolved thereon which clearly holds that N.J.S.A. 30:4-68.1 does then apply to the mentally retarded as well as the mentally ill." He also said the State "had attempted to apply rules of construction which are inapplicable to the current case in order to create a distorted impression of N.J.S.A. 30:4-68.1."
The judge said that reliance by the County on a 50/50 scheme for equalization of the financial responsibility of the state and *7 the county for indigent developmentally disabled people can be inferred from N.J.S.A. 30:4-78 and the scheme "is consistent with well-established New Jersey statutory law and case law mandating equal treatment of the mentally ill and retarded. Clark v. Degnan, 83 N.J. 393, 397 [416 A.2d 816] (1980); Guempel v. State, 159 N.J. Super. 166, 183 [387 A.2d 399] (Law Div. 1978), modified [in] Levine v. Institutions and Agencies, Department of New Jersey, 84 N.J. 234 [418 A.2d 229] (1980)." He said that although N.J.S.A. 30:4-78 "does not specifically provide for a 50/50 sharing for mentally retarded patients between the State and the county [it is] significant that our courts have nevertheless held that the payment scheme provided in N.J.S.A. 30:4-78 ... also applies to the mentally retarded." He also noted that the cost of treatment for the mentally ill and mentally retarded who have no county settlement is borne in full by the State under N.J.S.A. 30:4-69. In addition N.J.S.A. 30:4-24, as summarized in Guempel, 159 N.J. Super. at 172-173, 387 A.2d 399, provides that the admission and commitment of the mentally ill and retarded shall be treated equally within Title 30. In Clark, 83 N.J. at 397, 416 A.2d 816, the Court "specifically held that N.J.S.A. 30:4-78 provides a formula for dividing the maintenance costs of `mentally ill and mentally retarded patients cared for in state institutions.'" This was reaffirmed in Levine, 84 N.J. at 242-244, 418 A.2d 229.
The judge refused to accept the State's interpretation of the second sentence of N.J.S.A. 30:4-68.1 which says:
Should a state hospital for the mentally ill lose accreditation and subsequently not receive Federal Medicaid and Medicare payments, the Counties shall not be liable for the maintenance of Medicaid and Medicare-eligible patients.
Since psychiatric hospitals are "accredited" while DD facilities are "certified", the State claimed that the entire statute, all three sentences, referred only to psychiatric hospitals and not to DD facilities. The judge dismissed the State's argument that the limitations in the second sentence of § 68.1 controlled the meaning of the first sentence since it was not necessary for the Legislature in 1980 to provide relief to counties for lost *8 Medicaid and Medicare payments at State facilities for the mentally retarded "since those institutions had recently obtained Medicare/Medicaid provider status beginning in 1978." The judge said analysis of the final paragraph of N.J.S.A. 30:4-68.1 was not significant since it clearly dealt only with the loss of accreditation of Trenton State Psychiatric Hospital.
The judge said that a court's function in interpreting statutes is to effectuate the legislative goal to the extent permitted by statutory provisions. Statutes must be construed as written. It is "a well-known canon of statutory construction" that the ordinary meaning of the language of a statute is the best indication of legislative intent unless a word in the statute is given a specific statutory definition. If a statutory definition is extant, it controls and courts are bound by that definition. Since "patient" was defined at the time by N.J.S.A. 30:4-23, the judge held that meaning controlled. The legislature is presumably aware of the statutory definition. As a result he held that N.J.S.A. 30:4-68.1 in conjunction with 30:4-23 and 30:4-24
directs that maintenance costs that would otherwise be paid by Essex County for its Medicaid/Medicare-eligible mentally ill, tuberculosis and mentally retarded patients with Essex County settlement under the 50/50 program are to be satisfied by Federal Medicaid and Medicare payments to the State, thereby relieving Essex County from contributing to the cost of maintenance in such cases.
Regarding the State's reliance on legislative history, the judge noted that before such history is considered a statute must be ambiguous. In the present case he found the statute was not ambiguous since "patients" is defined in the statute.
The judge pointed out that the Legislature specifically rejected the language originally found in Senate Bill No. 1003 which limited the word "patients" to those in a psychiatric hospital and instead chose to rely on the statutorily-defined "patients". He refused to rewrite N.J.S.A. 30:4-68.1 to include the language rejected in 1980 by both the Governor and the Legislature.
*9 The judge said he did not have to speculate on the meaning of the legislation. The statute's use of the word "patients" was unambiguous. His reasoning was as follows:
The entire statutory scheme of Title 30 can allow for no interpretation other than that N.J.S.A. 30:4-68.1 applies to the mentally retarded as well as the mentally ill. N.J.S.A. 30:4-24, cited by the Supreme Court in Levine, refers to the mentally ill and mentally retarded as "patients," as did the Supreme Court itself in both that case and the Degnan case. Similarly, N.J.S.A. 30:4-49 and 30:4-73, under which the Penalty Adjustor must determine the settlement of the mentally retarded pursuant to N.J.S.A. 30:4-165.3, both speak of "patients."
Also included in the category of "patients" for purposes of distribution of the costs of care and maintenance under Title 30 are neuropsychiatric patients who generally receive treatments at the North Princeton Developmental Center, N.J.S.A. 30:4-177.12. I see also N.J.S.A. 30:4-177.21.
The fact that "patients" refers to mentally retarded individuals has been reconfirmed by the Laws of 1987, Chapter 116, Section 25. That is N.J.S.A. 30:4-25.1 which became effective as of June 7th, 1989 which provides:
30:4-25.1 definitions; classes for application for admission of eligible mentally retarded persons to functional services.
a. For the purpose of Title 30 of the Revised Statutes: And then it goes to Subparagraph 6.
"Residential services" means observation, examination, care, training, treatment, rehabilitation and related services, including community care, provided by the Department to patients who have been admitted or transferred to, but not discharged from any residential functional service for the mentally retarded.
And I might emphasize that the word "patients" was used in subparagraph 6.
Now, in dealing with statutory construction I might also add that the word or phrase should have the same meaning throughout the statute in the absence of a clear indication to the contrary. Perez v. Pantasote, Inc. 95 N.J. 105 [469 A.2d 22] (1984). In the present case, concerned only with payment of the costs of mentally retarded individuals with County settlement residing in State institutions, it is clear that "patients" refer to both the mentally retarded and mentally ill based on the issue of the term "patient" throughout Title 30.
* * * * * * * *
In accordance with the decisions of our Supreme Court in Clark v. Degnan, supra, and Levine v. Institutions and Agencies Department of New Jersey, supra, concerning the scope of N.J.S.A. 30:4-24, the patients referred to in N.J.S.A. 30:4-68.1 would still include the mentally retarded, just as the Supreme Court found N.J.S.A. 30:4-78 to include the mentally retarded although the mentally retarded were not specifically mentioned in N.J.S.A. 30:4-78.
Further, in considering the overall statutory scheme as just indicated of Title 30 and especially in light of all the other statutes that I have enumerated, any *10 definition of "patients" would have to include the mentally retarded. (1T47:16 to 51:5).
The judge also distinguished the State's dependence on Klein v. Hudson Cty., 187 N.J. Super. 603, 455 A.2d 583 (Law Div. 1980), aff'd, 187 N.J. Super. 433, 455 A.2d 491 (App.Div. 1981), certif. denied 91 N.J. 533, 453 A.2d 855 (1982), which the State claimed stood for the proposition that "New Jersey law intends to impose liability under N.J.S.A. 30:4-68 and 4-78 on counties for their indigent and that State and Federal Medicaid law does not discharge or otherwise affect the County's financial responsibility." The judge said the Klein case was brought by the State to challenge Hudson County's failure to pay maintenance costs for indigent in psychiatric hospitals, developmental centers and other residential facilities. He noted that the Klein events predated the January 1, 1980 effective date of N.J.S.A. 30:4-68.1. Although he recognized that the judge in Klein had said that an indigent's participation in Medicaid did not diminish the County's responsibility under N.J.S.A. 30:4-68 or 30:4-78, he concluded that theory did not apply after January 1, 1980.
As the Law Division judge pointed out, the function of the judiciary "is to effectuate the legislative goal as expressed in the language of the statute." Millan v. Morris View, 177 N.J. Super. 620, 625, 427 A.2d 605 (App.Div. 1981), quoting State v. Fearick, 69 N.J. 32, 37-38, 350 A.2d 227 (1976). If the language used by the Legislature is plain and the result is not contrary to obvious legislative intent, the function of a court is to enforce the terms of the statute. State v. Maguire, 84 N.J. 508, 528, 423 A.2d 294 (1980). In addition, "words and phrases contained in the statute should be given their ordinary meaning as well as understood meaning." State v. Pleva, 203 N.J. Super. 178, 188, 496 A.2d 375 (App.Div. 1985). When the Legislature has defined a term, as they defined "patients" in Title 30, "the courts are bound by that definition even if the definition does not coincide with the ordinary meaning of the words used." Todd v. Dabkowski, 148 N.J. Super. 146, 148, 372 A.2d 350 (App.Div. 1977). Moreover, since the Legislature enacted *11 the statute a court presumes thorough familiarity with the Legislature's own prior enactments and with the judicial construction placed on them. Yacenda Food Management Corp. v. N.J. Highway Authority, 203 N.J. Super. 264, 273, 496 A.2d 733 (App.Div. 1985).
As to the County's cross-appeal claiming error in the limited retroactivity ruling, we affirm for the reasons stated in our recent opinion in County of Essex v. Waldman, 244 N.J. Super. 647, 662-666, 583 A.2d 384 (App.Div. 1990), certif. denied, 126 N.J. 332, 598 A.2d 890 (1991) (order filed on May 28, 1991).
Affirmed.
NOTES
[1] N.J.S.A. 30:4-68.1 states in full:

In the case of Medicaid and Medicare eligible patients, the maintenance costs to be paid by the counties shall be satisfied by Federal Medicaid or Medicare payments to the State. Should a State hospital for the mentally ill lose its accreditation and subsequently not receive Federal Medicaid and Medicare payments, the counties shall not be liable for the maintenance of Medicaid and Medicare eligible county patients.
In the case of any county which has incurred an obligation to the State for the maintenance of such patients between December 21, 1975 and January 1, 1980, 1/3 of its obligation shall be forgiven. Any county which has made payments on account of such obligation shall receive a credit, to the extent that such payments exceed 2/3 of its total obligation, against obligations due to the State for other patients. L. 1980, c. 8, Section 1.
[2] N.J.S.A. 30:4-23 states:

"Patient" includes any person or persons alleged to be mentally ill, tuberculous, or mentally retarded whose admission to any institution for the care and treatment of such class of persons in this state has been applied for. [N.J.S.A. 30:4-23, repealed June 7, 1989].
[3] The parties agreed at oral argument that this was the date the present claim was first asserted by the County in companion litigation.
[4] The new definition of patient "means a person over the age of 18 who has been admitted to but not discharged from a short-term care or psychiatric facility." N.J.S.A. 30:4-27.2(s).