644 A.2d 576

IN MATTER OF THE COMMISSIONER OF INSURANCE'S IS-SUANCE OF ORDERS A–92–189 AND A–92–212, AND ADOPTION OF AMENDMENT TO N.J.A.C. 11:3–20.5 AND ADOPTION OF N.J.A.C. 11:3–20–APPENDIX.

Argued February 28, 1994—Decided June 14, 1994.

*Thomas P. Weidner* argued the cause for appellants State Farm Mutual Automobile Insurance Company, Selective Insurance Company, and Hanover Insurance Company (*Jamieson, Moore, Peskin & Spicer*, attorneys; *Mr. Weidner* and *Lee R. Jamieson*, of counsel and on the briefs).

*Joseph L. Yannotti*, Assistant Attorney General, argued the cause for respondent, Commission of Insurance (*Alexander P. Waugh*, Acting Attorney General of New Jersey, attorney; *Mary C. Jacobson*, Assistant Attorney General, of counsel; *Marilyn S. Silvia*, Deputy Attorney General, on the brief).

PER CURIAM.

The judgment is affirmed, substantially for the reasons expressed in the opinion of the Appellate Division, reported at 274 *N.J.Super.* 385, 644 *A.*2d 616 (1993).

GARIBALDI, J., dissenting.

In 1988 the Legislature enacted the present Excess Profits Law (EPL). *L.* 1988, *c.* 118. The statute's purpose, according to then-Governor Kean, was to "assure that a complete and accurate assessment of profits and losses is presented by insurers." *Governor's Conditional Veto Message to Senate Bill No. 3090,* at 2 (Nov. 9, 1987) (emphasis added) (hereinafter *Conditional Veto Message* ). The Court today violates the EPL by upholding *N.J.A.C.* 11:3–20.5(e), which excludes an insurer's actual expenses from the excess-profits calculation.

The EPL requires insurers to report the sum of profits from underwriting operations and investment income derived from policyholder-supplied funds. *N.J.S.A.* 17:29A–5.8. If actual operating profit is more than 2.5% above the insurer's 5.3% pre-tax profit allowed under New Jersey rate regulations, an insurer must refund excess profits to policyholders.

*N.J.S.A.* 17:29A–5.6(m) provides that in the calculation of the excess profits attributable to underwriting operations, underwriting income [1] is the difference between earned premiums and losses, loss adjustment expenses, and "other expenses exclusive of UCJF assessments." "[T]axes, licenses, and fees" and "general expenses" are specifically identified as "other expenses". *N.J.S.A.* 17:29A–5.7(c)(3), (3)(b), (3)(e). The FAIR surtax and assessment are "taxes," "fees," or "general expenses" and hence should be deducted in the excess-profits calculation.

---

[1] Underwriting income is significant because it is a component of actuarial gain, which amount is added in the final calculus to determine whether an insurer has earned excess profits. *N.J.S.A.* 17:29A–5.8; *N.J.S.A.* 17:29A–5.6(b).

Nonetheless, the Court today upholds *N.J.A.C.* 11:3–20.5(e), (Reg. 20.5(e)), a regulation that requires insurers in calculating their excess profits to exclude from "other expenses" the assessments and surtaxes paid by insurers pursuant to the Fair Automobile Insurance Reform Act of 1990, *L.* 1990, *c.* 8 (FAIR). Because the regulation's exclusion of FAIR's surtax and assessment contravenes both the plain language and the intent of the Excess Profits Law, *N.J.S.A.* 17:29A–5.6 to 5.16, I respectfully dissent.

## I

The challenged regulation states,

No expenses included in the Excess Profits Report shall include assessments * * * or surtaxes paid [to satisfy the JUA debt] * * * except to the extent the insurer was permitted to reflect the assessments and surtaxes in its approved rates * * * for any of the three years reported in the Excess Profits Report.

[*N.J.A.C.* 11:3–20.5(e).]

No one disputes that FAIR surtaxes and assessments are "taxes," "fees," or "general expenses" under EPL. *N.J.S.A.* 17:29A–5.7c(3), (3)(b), (3)(e); *In re Comm'r of Ins.,* 132 *N.J.* 209, 225, 624 *A.*2d 565 (1993) (observing that FAIR's " 'assessments' were to be regarded as 'expenses' of the insurance companies").

Likewise, EPL's plain language dictates that FAIR expenses and most other expenses should be deducted in the excess-profits calculation. That expenses are generally deducted is consistent with the plain meaning of "profits," *i.e.* "excess of returns over expenditure in a transaction or series of transactions." *Webster's Third New Int'l Dictionary* 1811 (1976).

Additionally, the statute specifically excludes an expense, but makes no mention of the FAIR surtax and assessment. The statute provides that "other expenses *exclusive of UCJF assessments,*" ("amounts paid by the insurer to the Unsatisfied Claim and Judgment Fund," *N.J.S.A.* 17:29A–5.6(n)) are deducted in determining underwriting income. *N.J.S.A.* 17:29A–5.6(m) (emphasis added). The EPL's specific exclusion of UCJF assessments from the underwriting-income calculation is additional evi-

dence in the statute's plain language that the Legislature did not intend FAIR surtaxes and assessments to be excluded. See *N.J.S.A.* 17:29A–5.6(m). Had the Legislature also intended to exclude FAIR's assessments and surtaxes from the excess-profits calculation, it would have amended the EPL.

The Legislature is presumed to be familiar with its prior enactments. *See Quaremba v. Allan,* 67 *N.J.* 1, 14, 334 *A.*2d 321 (1975); *County of Essex v. Comm'r, Dep't of Human Servs.,* 252 *N.J.Super.* 1, 10–11, 599 *A.*2d 167 (App.Div.), *certif. denied,* 127 *N.J.* 553, 606 *A.*2d 366 (1991). The presumption is especially strong in this case because when the Legislature imposed the surtaxes and assessments in FAIR, it explicitly declared that FAIR was "a logical, comprehensive and complete revision of the various laws and regulatory schemes that impact, in whatever fashion, on the system and its participants." *N.J.S.A.* 17:33B–2(f). Nonetheless, the Legislature did *not* amend the Excess Profits statute in any respect. It did, however, amend virtually every law dealing with automobile insurance. A partial listing of the statutes amended through FAIR includes the New Jersey Automobile Reparations Reform Act, *N.J.S.A.* 39:6A–1 *et seq.,* the Compulsory Motor Vehicle Insurance Law, *N.J.S.A.* 39:6B–2, the New Jersey Automobile Full Insurance Availability Act, *N.J.S.A.* 17:30E–1 *et seq.;* the New Jersey Automobile Insurance Reform Act of 1982, *N.J.S.A.* 17:29A–33 *et seq.;* the New Jersey Property–Liability Insurance Guaranty Association Act, *N.J.S.A.* 17:30A–1 *et seq.;* the Department of Insurance Act of 1970, *N.J.S.A.* 17:1C–1 *et seq.;* the New Jersey Antitrust Act, *N.J.S.A.* 56:9–1 *et seq.,* the Rules and Regulations for the Apportionment of Insurance Coverage, *N.J.S.A.* 17:29D–1, and the Penalty Point Acts, *N.J.S.A.* 39:5–30.9. It is highly unlikely that the Legislature would fail to amend the Excess Profits Act, significantly revised just two years earlier, *L.* 1988, *c.* 118, if it had in fact intended such an amendment.

## II

Regulation 20.5(e) not only violates the plain language of EPL, it is also contrary to the Legislature's intent in enacting the EPL.

The Appellate Division opinion places substantial weight on the presumption that the regulation is entitled to deference because of the expertise of administrative agencies. That analysis disregards the well-established principle that a regulation that conflicts with an existing statute is invalid.

Administrative agencies do not possess unbridled power to adopt rules and regulations they deem necessary to effectuate legislation. Indeed, the power to legislate cannot be delegated to agencies; agencies are empowered solely to administer existing statutes. Agencies derive their power "solely from a grant of authority by the Legislature." *General Assembly v. Byrne,* 90 *N.J.* 376, 393, 448 *A.*2d 438 (1982).

Courts read the delegating statute broadly to imply powers necessary to achieve the statutory purpose, *In re Schedule of Rates for Barnert Memorial Hosp.,* 92 *N.J.* 31, 39, 455 *A.*2d 469 (1983); *Cammarata v. Essex County Park Comm'n,* 26 *N.J.* 404, 411, 140 *A.*2d 397 (1958). Nonetheless, courts will invalidate any rule or regulation that conflicts with a statute. *Barnert Memorial Hosp., supra,* 92 *N.J.* at 40, 455 *A.*2d 469.

To uphold a regulation, therefore, the court must determine that the regulation is authorized and consistent with legislative policy. *Id.* at 39, 455 *A.*2d 469. The regulation challenged here is not.

The legislative history establishes that *actual* results for underwriting and investments are to be used to provide a "more accurate representation of profits." *Conditional Veto Message, supra,* at 2. I am totally unpersuaded by the Commissioner's suggestion that the new regulation is an effort to obtain a more accurate reflection of an insurer's actual condition.

Instead, I find that Regulation 20.5(e) precludes an insurer from reflecting a substantial cost of conducting private-passenger-automobile business in New Jersey. Here one insurance company reports paying approximately $60 million in surtaxes and assessments from 1990 to 1992. Another reports $31 million, and another reports $6 million. The Commissioner does not obtain an

accurate reflection of the insurers' financial conditions when those compulsory expenses are not considered.

Likewise, I am unpersuaded that unless the surtaxes and assessments are not excluded as deductions under the EPL, insureds will end up *actually paying* the surcharges and assessments imposed under FAIR. That is just plain wrong. Under *State Farm v. State*, 124 *N.J.* 32, 590 *A.*2d 191 (1991), the FAIR Act fees are already properly excluded from the ratemaking process. Thus, insureds are guaranteed that their premiums will not increase as a result of the assessment and surtax. To exclude the fees again at the Excess Profits stage provides insureds with a double benefit unauthorized by the anti-pass-through statutes. That second exclusion may permit an insured to receive a refund check. Such a refund check would issue even though any increased profits *could not have* resulted from the surtax and assessment because the insured never was charged and never paid a higher premium based on the surcharge or the assessments. Under the Court's holding, an insured could receive a refund even if an insurance company did not have any excess profits. Such a refund is equivalent to the Commissioner imposing an additional tax on insurers.

"The power to raise revenue or to tax is among the most fundamental of governmental powers." *In re Comm'r of Ins., supra,* 132 *N.J.* at 226, 624 *A.*2d 565. Moreover,

[t]he need not to give a "statute any greater effect than its language allows" is "particularly compelling" in the context of considering the power to tax. *Kingsley v. Hawthorne Fabrics, Inc.,* 41 *N.J.* 521, 528, 197 *A.*2d 673 (1964).

*Rarely does the Legislature extend revenue-raising authority with regulatory authority.* When it does, it closely hems in the grant of authority. See *Public Serv. Elec. & Gas Co. v. New Jersey Dep't of Envtl. Protection,* 101 *N.J.* 95, 104, 501 *A.*2d 125 (1985) (finding that Legislature authorized the agency to administer "cost-based" permit program, not a "revenue-raiser").

[*Ibid.* (emphasis added).]

### III

The Court rests the exclusion of surtaxes and assessments in the excess-profits calculation on the anti-pass-through provisions

of the FAIR. That argument is easily answered: the anti-pass-through provisions pertain solely to ratemaking under FAIR, *not* to the excess-profits calculation under EPL.

The Commissioner asserts that the Legislature in enacting the anti-pass-through scheme in FAIR impliedly repealed the specific provisions of the EPL that "taxes, licenses and fees" and "other expenses" be deducted in the excess profits calculation. But a repeal by implication requires clear and compelling evidence of legislative intent, and such intent must be free from reasonable doubt. *Mahwah Township. v. Bergen County Bd. of Taxation*, 98 *N.J.* 268, 280, 486 *A.*2d 818, *cert. den.*, 471 *U.S.* 1136, 105 *S.Ct.* 2677, 86 *L.Ed.*2d 696 (1985). Moreover, there is a strong presumption in the law against implied repealers and every reasonable construction should be applied to avoid such a finding. *Id.* at 281, 486 *A.*2d 818. In this case, no clear and compelling evidence exists that the Legislature intended to repeal any provisions of the Excess Profits Law exists.

Neither the legislative history nor the language of FAIR even hints at an intent to repeal by implication the provisions of EPL. Additionally, FAIR clearly dealt with the surtaxes and assessments in the context of standard ratemaking. Excess-profit calculation is not ratemaking, it is a retrospective review of *actual* profits and losses.

## IV

The surtax and assessments paid by insurers constitute taxes, fees, and/or other general expense as defined in the excess-profits statute and therefore must be deducted from premiums in the excess-profits calculation. No statutory basis exists to distinguish the surtax and assessments from other expenses required to be included in the excess-profits report.

The goal of the Excess Profits Law was to develop an accurate picture of an insurer's profitability and to "provide a safeguard against the possibility that an auto insurer would reap unreasonably high profits." *Conditional Veto Message, supra*, at 1.

Whether or not included in the calculation, the surtax and assessment are expenses that the insurance company must pay and those expenses reduce the company's profits. Today's holding will result in an evisceration of the law's purpose: the reporting of *actual* profits and the refund to policyholders of *excess* profits only.

Justice O'HERN joins in this dissent.

*For affirmance*—Justices CLIFFORD, HANDLER, POLLOCK and STEIN—4.

*For reversal*—Justices O'HERN and GARIBALDI—2.